**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORNILOUS LEAUTRY RILEY,<br><br>    Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | Case No. 1:22-cv-00366-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.   INTRODUCTION

Plaintiff Cornilous Leautry Riley ("Plaintiff") seeks judicial review of a final decision of the Acting Commissioner of Social Security (the "Acting Commissioner" or "Defendant") denying his application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.   FACTUAL BACKGROUND

On May 17, 2019, Plaintiff protectively filed an application for SSI payments, alleging he became disabled on July 7, 2018, due to bipolar disorder, depression, schizophrenia, and abdominal pain. (Administrative Record ("AR") 15, 20, 52, 57, 65, 78, 85–86, 188, 278, 281, 339, 351.) Plaintiff was born on July 7, 2000, and was 18 years old on the date the application was filed. (AR 25, 52, 65, 184, 200, 218.) He has an eleventh-grade education and can communicate in English.

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 10.)

(AR 25, 187, 189.)  Plaintiff has no past relevant work.  (AR 25, 189.)

**A.     Relevant Evidence of Record[2]**

      **1.     Medical Evidence**

In July 2019, Plaintiff presented for a consultative examination with Steven C. Swanson, Ph.D., at which he complained of "bipolar, depression, anxiety, schizophrenia, and abdomen pain." (AR 382–87.)  He reported being "independently able to complete all activities of daily living" and that he "enjoys writing poems and RAP music, and playing video games."  (AR 383.)  Plaintiff reported taking no medication.  (AR 383.)  A previous visit to a psychiatric facility for suicidal ideation when Plaintiff was 15 years old was noted.  (AR 383.)

Dr. Swanson observed Plaintiff's appearance "reflected satisfactory concern for personal hygiene and grooming," and his attitude was "friendly and cooperative."  (AR 383–34.)  He was fully oriented with normal eye contact.  (AR 384.)  Upon examination, Plaintiff had normal motor movement, normal speech, and a full range of affect with euthymic mood.  (AR 384.)  He had normal thought content and form with no evidence of delusions or psychosis.  (AR 384.)  He denied homicidal or suicidal ideation, had adequate abstraction abilities, adequate concentration, and intact judgment and insight.  (AR 384.)  Plaintiff had a normal general fund of knowledge, and he measured at the top end of the DSM borderline range of intellectual functioning.  (AR 384, 385.)

In December 2019, Plaintiff presented to Clinica Sierra Vista in December 2019 complaining of lumps in his groin and armpit area.  (AR 590–600.)  A history of schizophrenia was noted.  (AR 596.)  Upon examination, Plaintiff had normal mood, affect, behavior, judgment, and thought content.  (AR 592.)  He denied suicidal/homicidal ideation and hallucinations.  (AR 597.)

At a follow up session in January 2020, Plaintiff reported a history of depression, talking to himself, acting out, and becoming violent.  (AR 605.)  He endorsed auditory hallucinations when sleeping and paranoia.  (AR 605.)  Plaintiff was assessed "provisionally" with schizophrenia, and prescribed Abilify.  (AR 605.)

Plaintiff was incarcerated in Fresno County Jail in February 2020.  (AR 545–64.)  He was

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

assessed at that time as calm and cooperative, with a normal mood, appropriate affect, and normal speech.  (AR 546.)  He had no delusions or homicidal ideation.  (AR 546.)  Plaintiff was alert and oriented to person, place, time, and situation, and able to answer all questions with clear speech.  (AR 546.)  He was not slow to respond to questions and did not have trouble following directions.  (AR 546.)  His behavior did not suggest that he was danger to others or to himself.  (AR 546.)

In March 2020, Plaintiff presented for a psychiatric evaluation while in jail.  (AR 563.)  He reported experiencing bad thoughts and sadness.  (AR 563.)  A two-week hospitalization in 2018 due to being a danger to others was noted and, while there, Plaintiff attempted suicide.  (AR 563.)  He denied suicidal/homicidal ideation and auditory hallucinations, but noted that he experienced visual hallucinations including shapes and flashes.  (AR 563.)  He was alert, calm, and cooperative upon examination, with a "down" mood and "bright" affect.  (AR 563.)  Plaintiff's speech was noted as "over productive" and "tangential," and his thought process was "scattered at times."  (AR 563.)  No delusions content or paranoia was noted.  (AR 563.)  Plaintiff's insight and judgment were fair.  (AR 563.)  It was noted that Plaintiff was taking Abilify and was compliant with his medications, tolerating it well, with no side effects.  (AR 563.)  The provider indicated that Plaintiff "may be over-reporting symptoms," as they "do not match [his] presentation."  (AR 563.)  It was also noted that Plaintiff "asked several times if this will help him get SSI."  (AR 563.)

Later that month, Plaintiff had a follow up evaluation while in jail.  (AR 564.)  He reported he is doing "alright" and "ok, not too good, not too bad" since he was last seen.  (AR 564.)  His Abilify dosage was increased, which he found made him calmer, more relaxed, and lessened his anger.  (AR 564.)  He reported that he hears voices "but only when he is asleep," and that he will be "emotional [and] angry" when he does not take his medications.  (AR 564.)  Upon examination, he was alert and oriented to person, place and situation.  (AR 564.)  He had good eye contact with no abnormal movements.  (AR 564.)  Plaintiff's speech was regular in rate and volume, and he described his mood as "ok" with a flat affect.  (AR 564.)  His thought process was linear with no preoccupations or delusions, and no homicidal or suicidal plan or intent.  (AR 564.)  Plaintiff's insight into his symptoms was noted to be fair.  (AR 564.)

In June 2020, following his release from Fresno County Jail, Plaintiff presented at Clinica

Sierra Vista for a medication management follow up psychiatry appointment. (AR 604–09.) He was noted to be "cooperative and collaborative" during the visit. (AR 604.) Plaintiff reported that he was "a lot better, calmer, sleep improved, no 911 calls, [and] better w[ith] family." (AR 605.) He had abstained from using alcohol and marijuana. (AR 605.) Plaintiff's mental status exam was normal, with good insight, coherent thought process, unimpaired judgment, euthymic mood, and normal affect. (AR 606.) The provider noted Plaintiff was "markedly improved" and compliant with their medication plan. (AR 605, 608.)

Plaintiff reported problems with memory and his vision at an August 2020 follow up appointment for schizophrenia. (AR 625–30.) He was noted to be "stable on meds." (AR 626.) His mental status examination was normal as before. (AR 627.) In September 2020, Plaintiff was reported to be "cooperative and collaborative" and complained of sleep problems. (AR 631.) He was noted to require "lifelong mental health treatment," and was prescribed Seroquel. (AR 632.) His mental status examination again was normal. (AR 633.)

Later that month, Plaintiff continued to complain of sleep disturbances, as well as memory loss, that his "mind freaks out," and he experiences auditory hallucinations. (AR 663.) His mental examination was normal as before, except that his insight was listed as "fair." (AR 665.)

Plaintiff presented for a follow up psychiatry appointment in November 2020. (AR 678–84.) He was noted to be "stable on meds," "denie[d] current problems," and "in good spirits." (AR 679.) His mental examination was normal. (AR 681.) It was recommended that he continue his psychiatric medications as ordered. (AR 682.)

In January 2021, Andres Ahlas, M.D. of Clinica Sierra Vista noted that Plaintiff's paranoid schizophrenia symptoms were "stable" and he was being treated by the clinic's psychiatry department. (AR 707.) Plaintiff denied hallucination symptoms in March 2021. (AR 738.)

**2.     Opinion Evidence**

Following his consultative examination in July 2019, Dr. Swanson opined that Plaintiff would be able to maintain concentration and relate appropriately to others in a job setting, that he would be able to handle funds in his own best interests, and that he could understand, carry out, and remember simple instructions. (AR 386.) Plaintiff could respond appropriately to usual work

situations, such as attendance and safety.  (AR 386.)  Dr. Swanson noted that changes in routine would not be very problematic for Plaintiff and that there did not appear to be substantial restrictions in daily activities.  (AR 386.)  He further opined that difficulties in maintaining social relationships did not appear to be present.  (AR 386.)

Dr. Ahlas completed a "Mental Residual Functional Capacity Questionnaire" in June 2020.  (AR 538–39, 567–68, 579–80.)  Dr. Ahlas opined that, due to his schizophrenia, Plaintiff was precluded from performing mental understanding and memory tasks for 15% or more of an eight-hour workday, and would be absent from work and unable to complete an eight-hour workday for five days or more per month.  (AR 538–39, 567–68, 579–80.)  Dr. Ahlas also completed a "Physical Medical Source Statement" that same month in which he opined that Plaintiff would be off task for 25% or more of the workday and that he would be incapable of even "low stress" work.  (AR 565–66, 569–70, 723–24.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on August 8, 2019, and again on reconsideration on October 1, 2019.  (AR 15, 78–81, 85–89.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 90–105.)  At the hearing on April 21, 2021, Plaintiff appeared with counsel by phone and testified before an ALJ as to his alleged disabling conditions.  (AR 38–47.)

**1.     Plaintiff's Testimony**

Plaintiff testified that he lives in house with his mother and four siblings who are 14, 15, 18, and 19 years old.  (AR 38.)  He noted that his sister is his caregiver and that she makes sure that he takes his medications.  (AR 41.)  Plaintiff stated that he has never had a driver's license and that he uses medical transportation, the bus, or a rideshare service (Lyft) to get around.  (AR 38–39.)  He reported that he uses apps on his phone to contact these services.  (AR 39.)  He testified he spends his days hanging out with friends, who will "drive [him] around and go get stuff to eat."  (AR 39.)  According to Plaintiff, he does not engage in any physical activities with his friends due to "chronic prostatitis."  (AR 39.)  He testified that in a typical day he watches TV and movies and that he plays games on his phone.  (AR 40.)  Plaintiff stated he can take care of his personal hygiene needs.  (AR

43.)

According to Plaintiff, he is not capable of full time work due to his diagnoses of schizophrenia and bipolar disorder. (AR 40.) He testified he has a hard time thinking straight and not breaking down and crying or wanting to leave work. (AR 40–41.) He noted that he has a hard time focusing and that it is hard to work. (AR 41.) Plaintiff testified that he experiences sadness and fear. (AR 42.) According to Plaintiff, he sometimes gets "real[ly] depressed." (AR 42.) His depression "go[es] in cycles," and that he is very depressed very often. (AR 42–43.) Plaintiff testified that he sometimes does not want to take his medications, but they do help him and he has no side effects. (AR 42, 43.) He stated that he used marijuana in the past, but that he had not used it in four months because it made him feel paranoid. (AR 47.)

Plaintiff was asked whether he could perform a job like bagging groceries at a grocery store, and he testified he wasn't sure, as he had "never had a job like that." (AR 41.) According to Plaintiff, in 2020 he attempted to work at a peanut factory packaging and labeling goods. (AR 45.) He stated that he stopped working after less than a week because he had problems completing the work and he had doctor's appointments. (AR 45–46.) Plaintiff noted that while working he did not have any problems understanding or remembering the directions he was given, just that he had "a hard time keeping up." (AR 46.)

### 2. Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing. (AR 48–51.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history. (AR 48.) The VE was also to assume this person could understand, remember, and perform simple work. (AR 48.) The VE testified that such a person could perform certain jobs in the national economy such as commercial cleaner, Dictionary of Operational Titles (DOT) code 381.687-014, with a heavy exertional level and specific vocational preparation (SVP)[3] of 2; meat clerk, DOT code 222.684-010, with a medium exertional level and SVP of 2; and dishwasher, DOT code 318.687-010, with a medium exertional

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

level and SVP of 2.  (AR 48–49.)  The ALJ asked the VE to consider a person with the same limitation as in the first hypothetical, but would be off task more than 25% of the day, is incapable of even a low stress job, and would miss more than five days of work a month.  (AR 49.)  The VE testified that "[a]ny of those restrictions, any independently, would eliminate all competitive work."  (AR 49.)

**C.    The ALJ's Decision**

In a decision dated May 10, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 15–27.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 17–27.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since May 17, 2019, the application date (step one).  (AR 17.)  At step two, the ALJ found Plaintiff's following impairments to be severe: bipolar disorder and schizophrenia.  (AR 17–18.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 18–20.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five.  *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . .  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] can understand, remember, and perform simple work.

(AR 20–25.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

7

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 21.)

The ALJ determined that Plaintiff had no past relevant work (step four) and that, given his RFC, he could perform a significant number of jobs in the national economy, specifically commercial cleaner, meat clerk, and dishwasher (step five). (AR 26.) The ALJ concluded Plaintiff was not disabled since May 17, 2019, the application date. (AR 26–27.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on January 26, 2022. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of

> performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting his testimony regarding his subjective complaints, and also erred in discounting the medical opinion of Dr. Ahlas. (Doc. 17 at 8–16.) The Acting Commissioner responds that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations, and that their consideration of Dr. Ahlas's opinions was proper and supported by substantial evidence. (Doc. 18 at 8–16.) The Court agrees with the Acting Commissioner.

**A. The ALJ Properly Found Plaintiff Less Than Fully Credible**

    **1. Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an

ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[5] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**2. Analysis**

As noted above, in determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically

---

[5] The Court rejects the Acting Commissioner's contention that a lesser legal standard applies. (*See* Doc. 18 at 9 n.3.)

11

1   determinable impairments reasonably could be expected to cause the alleged symptoms. (AR 21.)
2   The ALJ, however, also found that Plaintiff's statements regarding the intensity, persistence and
3   limiting effects of these symptoms were "not entirely consistent" with the RFC. (AR 21.) Because
4   the ALJ did not make any specific finding of malingering, the ALJ was required to provide clear and
5   convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom
6   allegations. *Tommasetti*, 533 F.3d at 1039–40; *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir.
7   1996).

8   With respect to Plaintiff's "statements about the intensity, persistence, and limiting effects
9   of his symptoms," the ALJ found they are inconsistent with the overall record, which did not support
10  his "allegedly debilitating conditions." (AR 23.) The ALJ referenced Plaintiff's mental status
11  examination results, which were "consistently . . . generally normal," exhibiting "a calm and
12  cooperative attitude, normal thought content and form with no evidence of delusions or psychosis,
13  no homicidal or suicidal ideation, adequate abstraction abilities, adequate concentration, and intact
14  judgment and insight."[6] (AR 23 (citing AR 382–89, 545–64, and 581–710).) While "an ALJ may
15  not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully
16  corroborate the alleged severity of [the impairment]," "lack of medical evidence . . . is a factor that
17  the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 680, 681. *See also Salas v.*
18  *Colvin*, No. 1:13–cv–00429–BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014) ("Although
19  the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting
20  subjective complaints . . . it is one factor which may be considered with others.") (citations omitted).

21  The ALJ also found that Plaintiff demonstrated "good symptom control with proper
22  medication compliance and drug abstinence." (AR 23 (citing AR 545–64 and 581–710).) The record
23  shows that in in March 2020, Plaintiff reported that an increase in his medication dosage made him
24  calmer, more relaxed, and lessened his anger. (AR 564.) In June 2020, Plaintiff was noted to be
25  "markedly improved," compliant with his medication plan, and abstaining from alcohol and
26  marijuana. (AR 605, 608.) Plaintiff was observed to be "stable on meds" in August 2020 and again

---

[6] Plaintiff criticizes the ALJ for failing to cite specific page numbers of the multi-page exhibits to which they cite in support of this finding, but the opinion's summary of these exhibits makes clear to which pages the ALJ is referring. (*See, e.g.,* AR 22 (summarizing Fresno County Jail and Clinica Sierra Vista treatment records from 2019 and 2020).)

in November 2020. (AR 626, 679.) As recently as January 2021, Plaintiff's schizophrenia symptoms were deemed "stable." (AR 707); *see also Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]") (citations omitted); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ's adverse credibility determination properly accounted for physician's report of improvement with medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to treatment).

The ALJ further cited Plaintiff's "extensive activities of daily living" as another indication that he is "capable of more than he alleges." (AR 23.) The opinion notes that Plaintiff reported he writes rap songs, plays video games, spends time with friends, uses public transportation and rideshare services, watches television, and is "independently able to complete all activities of daily living." (AR 18, 19, 21.) While "'the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [their] credibility as to [their] overall disability,'" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)) (alteration in original), a claimant's testimony may be discredited "when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1113 (citations omitted); *see also Orn*, 495 F.3d at 639 (citing *Burch*, 400 F.3d at 681; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Even in cases where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citations omitted).

The ALJ also considered the "notations in the record that [Plaintiff] may have been exaggerating his symptoms in efforts to obtain secondary gain," citing a March 2020 evaluation at which the provider indicated that Plaintiff "may be over-reporting symptoms," as they "do not match [his] presentation," and that he "asked several times if this will help him get SSI." (AR 23 (citing AR 545–64).) An ALJ may appropriately consider "symptom exaggeration in the context of secondary gain" in discounting a claimant's credibility. *Haynes v. Colvin*, 614 F. App'x 873, 875 (9th Cir. 2015). *See also Delarosa v. Berryhill*, No. 2:17-CV-00423-AC, 2018 WL 4611362, at *8

(E.D. Cal. Sept. 26, 2018) ("An ALJ may discount a claimant's testimony based on a physician's observation that there is reason to suspect exaggeration of symptoms.").

Plaintiff treats each of the ALJ's justifications as independent deficiencies that do not constitute clear and convincing reasons for discounting his symptom testimony. (*See* Doc. 17 at 8–12.) But the ALJ found the foregoing ***collective*** medical evidence concerning Plaintiff's mental impairments to be inconsistent with Plaintiff's testimony regarding the intensity, persistence, and limiting effect of his symptoms. This case stands in contrast to *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015), for example.[7] In *Brown-Hunter*, the Ninth Circuit held that it is erroneous to make a "single general statement that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment, without identifying 'sufficiently specific reasons' for rejecting the testimony, supported by evidence in the case record." *Id.* at 493 (internal quotation marks and citation omitted). There, the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination," which "is not the sort of explanation or the kind of 'specific reasons' [courts] must have in order to review the ALJ's decision meaningfully" to "ensure that the claimant's testimony was not arbitrarily discredited." *Id.* at 494.

Unlike the ALJ in *Brown-Hunter*, who did not identify the testimony they found non-credible, *see id.*, the ALJ in this case summarized Plaintiff's testimony regarding the persistence, frequency, and limiting effects of his impairments. (AR 20–21.). They then detailed the evidence—including mental status examination results from 2019 and 2020—that contradicted Plaintiff's testimony, as outlined above. (AR 23.) *See also Guthrie v. Kijakazi*, No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) (rejecting the plaintiff's argument that "the ALJ legally erred by failing to clearly identify which portions of his symptom testimony she rejected and failing to link her rejection of that testimony to the record evidence," where the ALJ "sufficiently explained her reasons for discounting [the plaintiff's] symptom testimony, and we can easily follow her reasoning and meaningfully review those reasons.") (citing *Kaufman v. Kijakazi*, 32 F.4th 843, 851

---

[7] *Brown-Hunter* relies extensively on *Burrell v. Colvin*, 775 F.3d 1133 (9th Cir. 2014), which is cited by Plaintiff (*see* Doc. 17 at 11).

14

(9th Cir. 2022) (stating that the court considers "the ALJ's full explanation" and the "entire record")).

At bottom, Plaintiff takes issue with the ALJ's characterization of the record, and accuses them of "cherry-picking" evidence.[8]  (Doc. 17 at 9–11.)  But "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart,* 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotation marks and citations omitted).  Plaintiff references select portions of the record and offers his competing interpretation to establish error.[9]  (Doc. 17 at 11.)  However, the ALJ, not the Court, is responsible for weighing evidence and resolving conflicts.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Where, as here, the ALJ did so and the record supports their conclusions, the conclusions should be upheld.  *See Hiler v. Astrue*, 687 F.3d 1208, 1211 (9th Cir. 2012).  This is so even if Plaintiff's interpretation of the evidence is rational.[10]  *See Ford v Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *Orn*, 495 F.3d at 630. Although Plaintiff clearly expected more favorable findings, the ALJ's discussion sufficiently demonstrates that they did not arbitrarily reject his testimony.  *See Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996).

For these reasons, the ALJ articulated specific findings to support their conclusion that Plaintiff's testimony regarding his "debilitating conditions" was not entirely consistent with the evidence in the record.  Because substantial evidence in the record supports the ALJ's credibility finding, the Court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

**B.     The ALJ's Treatment of Dr. Ahlas's Opinions Was Not Erroneous**

**1.     Legal Standard**

Plaintiff's claim for SSI is governed by the agency's "new" regulations concerning how

---

[8] Plaintiff also criticizes the ALJ for failing to cite specific page numbers of the multi-page exhibits to which they cite in support of this finding, but the decision's summary of these exhibits makes clear to which pages the ALJ is referring. (*See, e.g.,* AR 22 (summarizing Fresno County Jail and Clinica Sierra Vista treatment records from 2019 and 2020).)

[9] For example, Plaintiff points to the fact that he was "diagnosed with paranoid schizophrenia and psychosis" (Doc. 17 at 11), but mere diagnosis alone does not establish a limitation in the ability to work. *See Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (mere diagnosis of an impairment does not show disability).

[10] While the Court is inclined to agree with Plaintiff that the ALJ's reliance on his "sparse" mental health treatment (AR 23) and the characterization of such treatment as "conservative" (AR 23) are misplaced, *see Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) and *Garcia v. Comm'r of Soc. Sec.*, No. 1:21-CV-00068-SAB, 2022 WL 2110709, at *7 (E.D. Cal. June 10, 2022) (collecting cases), because the ultimate credibility determination is supported by other substantial evidence in the record, as detailed above, there is no error. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

15

ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. § 416.920c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. § 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 416.920c(a)–(b).

Recently, the Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). *See also id.* § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id.* at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id.* § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id.* § 416.920c(c)(2).

16

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id.* (quoting § 404.1520c(b)(3)). *See also id.* § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id.* Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. §§ 404.1520c, 416.920c. *See* 20 C.F.R. §§ 404.1520b(c)(3), 415.920b(c)(3).

With these legal standards in mind, the Court reviews the weight given to Dr. De Zubiria's opinion.

### 2. Analysis

In weighing Dr. Ahlas's opinions related to Plaintiff's mental functioning, the ALJ reasoned that they "are not persuasive, as they appear to overestimate the claimant's limitations" because they "are inconsistent with the medical evidence of record, including Dr. Ahlas' own treatment notes which show generally benign mental status examinations, minimal mental health treatment, and that the claimant reported symptom stability with medication compliance (Exhibit 22F, 17F, 7F)." (AR 24–25.)

The Court concludes that the ALJ properly evaluated the supportability and consistency of Dr. Ahlas's opinions. As to supportability, the ALJ determined the opinions were not supported by his own treatment notes and objective findings, which showed "benign mental status examinations." (AR 25 (citing AR 382–89, 545–64, and 581–710).) For example, treatment notes from Clinica Sierra Vista from 2020, at which Dr. Ahlas is a provider, document normal examination results,

including good insight, coherent thought process, unimpaired judgment, euthymic mood, and normal affect. (AR 606, 627, 633, 665, 681.) Those same notes show, as set forth above, Plaintiff to be "markedly improved" and "stable" on his medications. (AR 605, 608, 626, 679.) In January 2021, Dr. Ahlas himself deemed Plaintiff's schizophrenia symptoms "stable." (AR 707). The lack of support by Dr. Ahlas's own treatment notes and objective findings was a proper consideration in evaluating the supportability of his opinion. *See, e.g., Trezona v. Comm'r of Soc. Sec.,* No. 1:21-CV-00792-EPG, 2022 WL 1693493, at *3 (E.D. Cal. May 26, 2022); *Amanda B. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-CV-01507-YY, 2022 WL 972408, at *7 (D. Or. Mar. 31, 2022).

As to consistency, the ALJ found Dr. Ahlas's opinions concerning Plaintiff's mental limitations was generally inconsistent with the other medical evidence. As cited by the ALJ (AR 25), consultative examiner Dr. Swanson found Plaintiff had normal motor movement, normal speech, a full range of affect, euthymic mood, adequate abstraction abilities, adequate concentration, intact judgment, intact insight, normal general fund of knowledge, and normal thought content and form with no evidence of delusions or psychosis. (AR 384, 385.) In addition, records from the Fresno County Jail evidence Plaintiff's calm and cooperative demeanor, with a normal mood, appropriate affect, and normal speech. (AR 546.) It was noted that he was not slow to respond to questions and did not have trouble following directions. (AR 546.)

In asserting error in the treatment of Dr. Ahlas's opinions, Plaintiff repeats his "cherry-picking" criticism and suggests that the opinions were "ignored" by the ALJ. (Doc. 17 at 14–16.) Neither occurred in this case. As set forth above, the fact that Plaintiff's course of treatment could be interpreted differently has no effect on this Court's ruling. *See Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted). *See also Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). And, contrary to Plaintiff's suggestion, the ALJ directly addressed Dr. Ahlas's opinions and explained how they were inconsistent with the medical record, including his own

clinic's treatment notes described in the decision.  (AR 21–22, 25.)  *Cf. Marsh v. Colvin*, 792 F.3d 1170, 1171 (9th Cir. 2018) (ALJ's decision "nowhere mentions [the treating physician at issue] or his . . . notes"); *Garrison*, 759 F.3d at 1013 (ALJ "ignored most of [treating physician's] records including . . . dozens of medical test results, and [his] own treatment notes").

Here, the medical record does reflect that Plaintiff has some deficiencies that limit him to "understanding, remembering, and performing simple work" because of his severe impairments of bipolar disorder and schizophrenia.  (*See* AR 17, 20.)  Yet, it was reasonable for the ALJ to conclude that the record did not support the severity of the restrictions opined by Dr. Ahlas.  That these opinions lacked support and were inconsistent with the medical evidence were legally sufficient findings based on substantial evidence.  Thus, the ALJ did not err by finding the opinions of Dr. Ahlas "not persuasive."

## V.  CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:  **June 7, 2023**                    /s/ *Sheila K. Oberto*                    
                                            UNITED STATES MAGISTRATE JUDGE